# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| LAYLA M. ROBINSON, by her next friend, TANYA ROBINSON, | Case Number: 09-10675 |
| Plaintiff, | VIRGINIA M. MORGAN UNITED STATES MAGISTRATE JUDGE |
| v. | |
| LOWE'S HOME CENTERS, INC., | |
| Defendant. | |

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 36)

In this personal injury lawsuit, plaintiff Layla M. Robinson ("plaintiff"), the mother of Tanya Robinson ("Tanya"), a minor, alleges that Defendant Lowe's Home Centers, Inc.'s ("Lowe's") negligent maintenance of its parking lot and its defective shopping cart caused Tanya severe injury when the shopping cart Tanya was sitting in rolled across the parking lot, hit a pothole, and tipped over, landing on top of then two-year old Tanya. Presently before the court is Lowe's motion for summary judgment. The motion was fully briefed, and the court heard oral argument on March 17, 2010. For the reasons stated below, the court **GRANTS** Lowe's motion for summary judgment.

## I. Background

On June 30, 2007, Luther Robinson, Tanya's father, took her to Lowe's in Southfield, Michigan. (Compl. ¶ 5). Mr. Robinson carried Tanya, who was two years old at the time, in to the store where a Lowe's employee handed him a shopping cart. (Doc. No. 36, Def.'s MSJ Ex. B,

1

Luther Robinson Dep. 14, 22). Mr. Robinson placed Tanya in the child seat of the cart. (*Id.* at 25). After shopping for approximately forty-five minutes, he checked out and wheeled his purchases and Tanya to the car in the shopping cart. (*Id.* at 25-26). One of Lowe's employees helped load some of Mr. Robinson's purchases into his Dodge Durango, and then the employee returned to the store. (*Id.* at 19, 27). As Mr. Robinson turned to put his remaining purchases in the Durango, the cart rolled away, for a few seconds, and hit a pothole. (*Id.* at 27-28). Tanya was still in the cart as it started to roll. (*Id.* at 27-28). One of the cart's wheels came off and the cart flipped over on to Tanya, "pinn[ing] her arm up under the cart." (*Id.* at 28, 32, 37-38, 46). Mr. Robinson went over to her and picked her up. (*Id.* at 47). They got into the car and Luther drove Tanya to Children's Hospital, where Tanya was diagnosed with a broken arm. (*Id.* at 46-50). Tanya wore a splint for a week and then was in a cast for two and a half weeks. (*Id.* at 50).

The following day, July 1, 2007, Mr. and Mrs. Robinson went to Lowe's to report the incident to the store manager. (Doc. No. 36, Def.'s MSJ Ex. H., Incident Report). The incident report, written by store manager Michael Strahan, states:

> Customer was in the store on 6-30-07 at 457 pm [sic] after leaving the store with a cart the customer hit a crack in the parking lot and the cart fell over. The customers [sic] daughter was in the cart. The cart rolled into a hole with a crack causing the cart to fall over. The customers [sic] daughter broke her arm in two places. The customer then took his daughter to the Children [sic] Hospital of Michigan Emergency Department. The customer and his wife returned to the store on 6-30-07 around 11pm and talked to James. James told them to come back to the store on 7-1-07 and talk to Rob. The customer and his wife talked to the tore manager (Michael). The customer and the store took pictures of the crack. The property management information was given to the customer. The store manager made the decision to block off the area.

*Id.*

Lowe's also submitted an unsigned affidavit from Strahan that states Mr. and Mrs. Robinson both told him that the crack or hole in the parking lot caused the shopping cart to tip over and neither

2

of them told him that the shopping cart was defective or that the wheel fell off. (Doc. No. 36, Def.'s MSJ Ex. F, Strahan Aff. ¶¶ 5-7). The unsigned affidavit also states that the "shopping cart was put back into service as it was not defective." (*Id.* at 8). In Lowe's reply brief, Lowe's explains that Strahan's affidavit, which he allegedly helped prepare, is unsigned because "[a]fter the motion was filed, Mr. Strahan took a medical leave of absence and is physically and mentally unable to sign the Affidavit at this time."[1] (Doc. No. 40, Def.'s Reply Br. 2 n 1).

Lowe's did submit a signed affidavit, with its reply brief, from James Ison, the Department Manager, who attests that he spoke to Luther immediately after the incident. (Doc. No. 40, Def.'s Reply, Br. Ex. 1, Ison Aff. ¶ 4). Ison further averred that he inspected the shopping cart, it was not defective, and it was returned to service. (*Id.* at ¶¶ 8-9). Ison also stated that Lowe's does not own the parking lot and is not responsible for the maintenance and repair of the parking lot. (*Id.* at ¶¶ 11-12).

Lowe's leases its store and parking lot from Ramco-Gershenson. (Doc. No. 36, Def.'s MSJ 9). Under the lease, Ramco-Gershenson is responsible for keeping the parking area "suitably paved" and in "good repair, maintenance and condition." (*Id.* at Ex. D, Ground Lease ¶ (I)).

Plaintiff filed the instant suit in Wayne County Circuit Court on January 26, 2009. The complaint alleges a single count of negligence. (Compl.) Lowe's timely removed Plaintiff's complaint to this court on February 23, 2009, on the basis of diversity jurisdiction. (Doc. No. 1).

Pursuant to 28 U.S.C. §36(c) and Fed. R. Civ. P. 73, the parties consented to this court's jurisdiction, and the Honorable Virginia M. Morgan, United States Magistrate Judge, will conduct

---

[1]Lowe's does not explain why Strahan was unable to sign the affidavit before its motion for summary judgment was filed, or why it relied on an unsworn affidavit in it brief in support of its motion for summary judgment. Therefore, the court does not rely on it.

any further proceedings in the case, including trial, order the entry of a final judgment, and conduct all post-judgment proceedings. (Doc. No. 30).

## II. Standard of Review

The United States Court of Appeals for the Sixth Circuit has summarized the standard for summary judgment as follows:

> Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. "The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial."

*Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411-12 (6th Cir. 2008) (internal citations omitted).

## III. Analysis

Lowe's first argues that Plaintiff's complaint should be dismissed as a matter of law because Lowe's did not have possession and control of the premises and, therefore, did not owe a duty to Plaintiff. (Doc. No. 36, Def.'s MSJ 6). Lowe's argues that it did not have possession and control of the parking lot because its landlord was required to maintain and repair the parking lot. (*Id.* at 9).

Plaintiff responds that Lowe's is the possessor the parking lot, notwithstanding the landlord's contractual duty to maintain and repair the parking lot, and Lowe's has a duty to protect its business invitees from dangerous conditions on the property. (Doc. No. 38, Pl.'s Resp. 10-11).

"A common-law negligence claim requires proof of (1) duty; (2) breach of that duty; (3) causation, both cause in fact and proximate causation; and (4) damages." *Romain v. Frankenmuth Mut. Ins. Co.*, 483 Mich. 18, 21-22 (2009). An occupier of land is "liable for injury resulting from

4

an unsafe condition either caused by the active negligence of itself and its employees or, if otherwise caused, where known to the storekeeper or the condition is of such a character or has existed a sufficient length of time that it should have had knowledge of it." *Hampton v. Waste Management of Michigan, Inc.*, 236 Mich. App 598, 604 (1999) (internal brackets, quotation marks, and italics omitted). In this case, Lowe's liability is dependant on whether it was the possessor or occupier of the parking lot.

In *Bluemer v. Saginaw Central Oil & Gas Service, Inc.*, 356 Mich. 399, 411-12 (1959), the Michigan Supreme Court held that where a lessor does not conduct business or direct its tenant's business, liability is imposed on the lessee, not the property owner. *See also Brown v. Standard Oil Co.*, 309 Mich. 101, 14 N.W.2d 797 (1944) (Holding that the property owner was not liable for the injuries to an employee of the lessee gas station because the lease did not reserve to the owner the right to exercise control over the business or operations of the lessee on the premises). Thus, the inquiry is focused on whether the property owner controls the tenant's business.

In this case, the lease between Lowe's and the property owner does not reserve to the property owner any right to direct Lowe's business on the property. Therefore, in accordance with *Bluemer*, 356 Mich. at 411-12, Lowe's is the possessor of the property and liable for injuries that occur on the property. Lowe's argument that the lease provision requiring the property owner to maintain and repair the property is unavailing. The court finds that the lease provision does not absolve Lowe's of its duty to protect business invitees from dangerous conditions on the land. Lowe's, as the possessor of the property, is the entity inviting customers on to the property for business purposes and, therefore, must insure that the property is free of dangerous conditions. Moreover, Lowe's is in the best position to discover such conditions, as its employees are in the

position to inspect the parking lot daily. The lease provision cited by Lowe's holds the property owner responsible for maintaining and repairing the parking lot; Michigan negligence law holds Lowe's, as the possessor or occupier of the property, responsible for inspecting the parking lot and keeping it free from dangerous conditions. The fact that the property owner was contractually bound to repair any defect in the property does not alter Lowe's duty to its business invitees; rather, the lease merely transfers the responsibility of making repairs of the defects to the property owner. Lowe's retains the duty to inspect the property for unsafe conditions and make appropriate arrangements to protect its business invitees from any unsafe condition. Accordingly, Lowe's is not entitled to summary judgment on this ground.

Lowe's next argues that summary judgment should be granted because the pothole in the parking lot was open and obvious to Mr. Robinson and, Lowe's argues, it does not have a duty to protect invitees from open and obvious hazards. (Doc. No. 36, Def.'s MSJ 11-12, 16-17). Plaintiff argues that the open and obvious doctrine does not apply to children under the age of seven and, even if it does, a jury should decide whether the pothole was open and obvious to a two-and-a-half year old. (Doc. No. 38, Pl.'s Resp. 12).

The duty of a land possessor to invitees is not unlimited. "A landowner does not owe a duty to invitees where the dangers are so obvious and apparent that an invitee may be expected to discover them himself." *Kessler v. Visteon Corp.*, 448 F.3d 326, 329-330 (6th Cir.2006). This exception is referred to as the "open and obvious" doctrine.

The parties disagree as to whose perspective should be used to evaluate the open and obviousness of the pothole. Lowe's contends that Mr. Robinson's perspective should be used; whereas Plaintiff argues that the focus on the inquiry is on Tanya. In support of her argument,

Plaintiff relies on *Bragan v. Symanzik*, 263 Mich. App. 324 (2004), lv. den. 572 Mich. 926 (2005).

In *Bragan*, an unsupervised, eleven-year-old boy, went into a barn on the defendants' farm to climb the Jacob's Ladder. 263 Mich. App. at 326. After successfully climbing to the top of the ladder, the plaintiff began his descent and halfway down the ladder, he fell and fractured both wrists when he hit the barn floor. *Id.* The barn floor was thinly covered with straw, and the defendants did not have anyone supervising the Jacob's Ladder. *Id.* at 326-27.

The Michigan Court of Appeals held that the open and obvious doctrine is applicable to children. *Id.* at 334. However, the court found that a minor invitee is not held to the standard of an adult invitee and courts "must consider whether a dangerous condition would be open and obvious to a reasonably careful minor; that is, whether the minor would discover the danger and appreciate the risk of harm." *Id.* at 335. Because there was a factual question as to whether the plaintiff could have appreciated the risk involved in climbing the Jacob's Ladder, the court concluded that a jury had to decide "whether the Jacob's Ladder and lack of straw amounted to [an] open and obvious dangerous condition in the eyes of a child, and if open and obvious, whether the condition was unreasonably dangerous in light of the targeted youthful audience." *Id.* at 336.

Plaintiff also relies on *dicta* in *Bragan* for the proposition that the open and obvious doctrine does not apply to children under seven because children under the age of seven are presumptively incapable of committing negligence. *Id.* at 333-334. The *Bragan* Court, however, did not decide whether the open and obvious doctrine is applicable to children under seven. Instead, the court cited to the rule of law that children under seven are incapable of committing negligence to show that the law treats children differently than adults and, in negligence actions involving children, children are only required to act as a minor of similar age, experience, and mental capacity. *Id.* at 334. Whether

7

the open and obvious doctrine applies to children under seven is, therefore, an open question.

This court does not need to reach the question of whether the open and obvious doctrine applies to children under seven because it concludes that the focus of the open and obvious inquiry in this case is whether the pothole would have been open and obvious to a reasonable person in Mr. Robinson's position. This case is distinguishable from *Bragan*, where the court applied the open and obvious standard to the child in the case, because, in this case, the child, Tanya, was not in control of her actions. Unlike in *Bragan*, where the child climbed the Jacob's Ladder, without supervision and by his own volition, Tayna was placed in the shopping cart by her father and Mr. Robinson controlled the cart's movements. Tayna is further distinguishable from the plaintiff in *Bragan* because Tayna was not in a position to evaluate the risk of her being in the shopping cart in the parking lot because her father controlled her movements. Mr. Robinson pushed the cart, with Tayna as a passenger, out to his car in the parking lot and he placed it next to the car, whereafter it rolled away from him and hit the pothole. Because Tayna was not the one controlling the cart, the court will apply the open and obvious doctrine to Mr. Robinson.

"Under Michigan law, a condition is considered open and obvious if the dangerous characteristics are readily apparent or easily discoverable upon casual inspection by the average person of ordinary intelligence." *Osontoski v. Wal-Mart Stores, Inc*., 143 F.3d 1027, 1028 (6th Cir.1998) (citation omitted).

In this case, the court finds that the pothole was open and obvious. The Michigan Supreme Court has classified ordinary potholes as "typical open and obvious dangers," which "cannot form the basis of liability against a premises possessor." *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 520 (2001). There is nothing in the record to suggest that this pothole was out of the ordinary. Also,

it is legally irrelevant that Mr. Robinson did not notice the pothole as he pushed the cart to his car, as the legal inquiry is whether the pothole would have been discovered upon the casual inspection of a person with ordinary intelligence. *See Osontoski*, 143 F.3d at 1028. Upon inspection of the pictures of the pothole and the testimonial evidence provided by the parties, the court finds that no reasonable jury could conclude that the pothole was not open and obvious. Accordingly, the open and obvious doctrine bars Plaintiff's recovery on her premises liability claim.

Plaintiff further argues that the shopping cart's defective wheel created a "special aspect," which excepts Plaintiff's claim from the open and obvious doctrine. In *Lugo*, the Supreme Court decribed conditions that presented special aspects, such as "a commercial building with only one exit for the general public where the floor is covered with standing water" or "an unguarded thirty foot deep pit in the middle of a parking lot." 464 Mich. at 518. Although these hypothetical conditions would be open and obvious, the Michigan Supreme Court stated that the risk of harm would remain unreasonable, despite their obviousness. *Id*. at 516-517.

Plaintiff's argument is unavailing. A special aspect, as described by the Michigan Supreme Court, is an unavoidable or unreasonably dangerous condition arising from the land, even though the dangerous condition is open and obvious. *See Lugo*, 464 Mich. at 516-18. The allegedly defective cart is unrelated to pothole, the condition on the land, and does not render the pothole unavoidable, like a building with only one exit, or unreasonably dangerous, like a thirty foot deep pit. The cart, therefore, is not a special aspect and it does not exempt plaintiff's claim from the open and obvious doctrine.

Plaintiff also urges this court to analyze her claim under the normal common-law negligence framework, rather than as a premises liability claim, because plaintiff claims that the defective

shopping cart caused Tanya's injury. (Doc. No. 36, Pl.'s Resp. 6). Lowe's responds that there is no evidence that the shopping cart was defective. (Doc. No. 40, Def.'s Reply 5).

Although there is evidence, by way of Mr. Robinson's deposition testimony, that the cart was defective, the court concludes that this claim sounds in premises liability, rather than ordinary negligence. When an injury results from a condition of the land, rather than from an activity conducted on the land, the action sounds in premises liability. *James v. Alberts*, 464 Mich. 12, 18-19 (2001). Plaintiff alleges that the defect in the shopping cart manifested "when it rolled into a hole in the defendant's parking lot," thereby causing the cart to tip over. (Compl. ¶ 9). Plaintiff has not made any allegation or presented any evidence that Tanya's injury resulted from an activity conducted on the land, rather than from a condition of the land. Irrespective of the condition of the shopping cart, Plaintiff's claim is premised on a allegedly dangerous condition of the land, the pothole, without which Tanya's injury would not have occurred. For this reason, plaintiff's claim sounds in premises liability.

Plaintiff also argues that summary judgment is not appropriate because a mutual benefit bailment was created when a Lowe's employee handed Mr. Robinson the shopping car. (Doc. No. 38, Pl.'s Resp. 6). Lowe's responds that plaintiff did not plead a bailment claim in her complaint, and even if she had properly pled the claim, no bailment existed. (Doc. No. 40, Def.'s Reply 3-4).

Assuming that plaintiff pled a bailment theory in her single-count negligence complaint, summary judgment is granted to Lowe's because there are no facts that support the conclusion that a bailment existed between plaintiff and Lowe's. A bailment for mutual benefit, also known as a bailment for hire, has been defined as "one wherein a person gives to another the temporary use and possession of property, other than money, for a reward, the latter agreeing to return the property to

the former at a future time. . . ." *Godfrey v. City of Flint*, 284 Mich. 291, 295-296 (1938). In order to effect delivery of the subject of the bailment, there must be a full transfer of the property to the bailee so as to exclude the possession of the owner and all other persons and to give to the bailee the sole custody and control thereof. 8 Am Jur 2d, Bailments, § 56, p. 961. Generally, the creation of a bailment requires the possession and control over the subject matter to pass completely from the bailor to the bailee. 8 Am Jur 2d, Bailments, § 54, p. 960.

In this case, the factual allegations in plaintiff's complaint do not show the existence of a bailment. The complaint alleges that defendant provided the shopping cart for Mr. Robinson's use as a customer in the store. First, if a bailment was created, the bailor would be Lowe's and the bailee would be Mr. Robinson, not plaintiff, because Mr. Robinson is the one who accepted the cart. Thus, it is not possible that a bailment was created between plaintiff and Lowe's. Second, viewing the facts in the complaint in the light most favorable to plaintiffs, the allegations indicate that Lowe's did not relinquish possession and control of the shopping cart: Lowe's could have taken the cart back at anytime and Mr. Robinson had only the limited right to use the shopping cart while he was in the store and parking lot. Unlike the cases cited by plaintiff, in which a bailment was actually established, there was no "full transfer" to Mr. Robinson in this case. Lowe's, therefore, is entitled to summary judgment.

## IV. Conclusion

For the reasons stated above, the court **GRANTS** Lowe's motion for summary judgment (Doc. No. 36).

SO ORDERED.

                    s/Virginia M. Morgan
                    Virginia M. Morgan
                    United States Magistrate Judge

Dated: April 13, 2010

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 13, 2010.

                    s/Jane Johnson
                    Case Manager to
                    Magistrate Judge Virginia M. Morgan